IN THE UNITED STATES DISTRICTCOURT FOR THE
MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM DAVIS and <br> LINDA DAVIS, <br><br> Plaintiffs, <br> v. <br><br> ARROW FINANCIAL SERVICES, LLC <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO.: <br> 07-CV-215 |

## MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM

COMES NOW, the defendant, Arrow Financial Services, LLC (hereinafter "Arrow"), by and through its undersigned attorney of record and files this Memorandum of Law in Response to the Motion to Dismiss Counterclaim filed by the Plaintiffs, William and Linda Davis (hereinafter "Davis"). In response to the motion, Arrow would show the following:

### Statement of Facts

The plaintiff, Linda Davis (hereinafter "Ms. Davis"), obtained a credit card issued by Household Bank on behalf of Yamaha Motor Corporation. Ms. Davis received and used (or authorized the use of) the Household credit card. By using and/or authorizing the use of this credit card, Ms. Davis accepted the contract with Household and became bound to pay for all charges incurred on the credit card account. Ms. Davis also became subject to all of the terms and conditions of the cardholder agreement issued by Household.

Each month, Household mailed monthly statements to Ms. Davis reflecting all charges incurred with the credit card, the monthly payment due and the total balance due. Ms. Davis never disputed the amount for charges reflected on the credit card statements. Ms. Davis did however, default in her payment obligations on the credit card. Household eventually charged off the credit card account of Ms. Davis and on September 18, 2006, sold the unpaid, charged off account to Arrow. The total account balance purchased by Arrow was $10,612.80. Arrow made demand for payment to Ms. Davis for the unpaid balance, but she failed and refused to pay her credit card obligation. Accordingly, the debt owed to Arrow in the amount of $10,612.80 plus all allowable interest and attorney's fees remains due and owing

Arrow denies the allegations in the complaint that Arrow instituted an "unauthorized and illegal charge on the plaintiffs' Sears billed MasterCard" because, as the evidence would show, the use of the credit card was with Ms. Davis' consent.

On March 13, 2007, Ms. Davis along with her husband, William Davis filed a complaint against Arrow claiming a violation of the Fair Debt Commercial Practices Act ("FDCPA") as well as various state law claims. On July 6, 2007, Arrow filed its counterclaim seeking to collect the unpaid balance. Davis then filed a Motion to Dismiss this counterclaim challenging the jurisdiction of this Court to hear the claims of Arrow.

### Introduction

In the Motion to Dismiss, Davis contends that the counterclaim brought by Arrow was brought simply to "harass and abuse the plaintiffs" for bringing their cause of action against Arrow. They also allege that Arrow brought this counterclaim to "confuse and persuade a finder of fact" and to "coerce plaintiffs into dismissing their rights." Arrow

has no such intent. Arrow simply wants all of the facts before this Court so that all of the issues between the parties can be decided. There is no dispute that the debt to Arrow is due and owing by Ms. Davis. The challenge by Davis of the jurisdiction of this Court to hear the counterclaim is their own concerted effort to "confuse and persuade the finder of fact" and to avoid the responsibility for the unpaid credit card balance. It is the plaintiff who is attempting to coerce and chill Arrow's right to bring a proper and just cause of action for the outstanding debt that is owed.

Under binding and well settled authority, Arrow's counterclaim arises from the same nucleus of operative facts as the claims made by Davis in this case. As such, the claim raised by Arrow for the collection of the unpaid charged off credit card debt is deemed a compulsory counterclaim. Other circuits have ruled that claims of this nature are permissive counterclaims, not compulsory. However, because they are so related to the claims raised by the Plaintiffs, such permissive counterclaims fall under the supplemental jurisdiction umbrella provided to this Court in 28 U.S.C. §1367(a). Either way, jurisdiction of this Court over its counterclaim is just and proper.

## Standard of Review

Davis seeks to dismiss the counterclaim of Arrow alleging that it fails to invoke this Courts subject matter jurisdiction. See F.R. Civ Proc 12(b)(1). Because of this challenge, Arrow bears the burden of producing the necessary facts to establish subject matter jurisdiction. See *Taylor v. Appleton*, 30 F. 3d §1365 (11th Cir 1994) and *Weitzman, LLC v. Microcomputer Resources*, 2007 WL 744649 (S.D. FLA 2007).

3

## Argument

**I.  Counterclaims under the Federal Rules of Civil Procedure**

The primary issue before the Court on the motion by Davis is whether this Court has subject matter jurisdiction over Arrow's counterclaim. "The first step in a subject matter jurisdiction analysis for a counterclaim is to do determine if the claims in the counterclaim are compulsory. . . . If a counterclaim is compulsory, then the Court will have jurisdiction. If the counterclaim is permissive, then the court must determine whether to exercise its discretion to assert supplemental jurisdiction under 28 U.S.C. § 1367." *Weitzman, LLC v. Microcomputer Resources*, 2007 WL 744649 (S.D. FLA 2007). A compulsory counterclaim arises "out of the same transaction or occurrence that is the subject matter of the opposing parties claim. See F.R. Civ. Proc. 13(8). A permissive counterclaim is any claim against an opposing party not arising out of the transaction or occurrence that is the subject of the opposing party's claim. See F. R. Civ. Proc 13(b)." Arrow will show that, under either analysis, jurisdiction over the counterclaim is proper.

**II.  Eleventh Circuit deems Arrow Counterclaim to be Compulsory Counterclaim**

The Eleventh Circuit applies the logical relationship test to determine whether a counterclaim is compulsory or permissive. See *Bakewell v. Federal Financial Group* 206 WL 739807 (N.D. GA 2006). According to the court in *Bakewell:*

> a logical relationship exists when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant. See *Plant v. Blazer Financial Services of Georgia,* 598 F.2d §1357 (5th Cir 1979). This test is a lose standard which permits a broad realistic interpretation in the

interest of avoiding multiplicity of suits. See *U. S. Vantreco, Inc.*, 790 F. Supp. §1576 (N. D. GA 1992)." *Id.*.

Under this logical relationship test, the same operative set of facts serve as the basis for the claims raised by Davis in the original suit and the claims raised by Arrow in its counterclaim. Both the original complaint and counterclaim arise from the uncontested, unpaid debt of Linda Davis. Clearly there is one single aggregate core of operative facts giving rise to the claims of Davis in their complaint and the claims of Arrow and its counterclaim. Because there is a single aggregate core of operative facts, the counterclaim filed by Arrow is compulsory and this Court has proper jurisdiction.

Well settled authority in the Eleventh Circuit supports Arrow's position that debt counterclaims are compulsory in nature. In the case of *Plant v. Blazer Financial Services of Georgia,* 598 F.2d §1357(5th Cir 1979), the Court held that an original loan transaction provided the operative set of facts that give rise to both the plaintiff's claim for violations of the Federal Truth in Lending Act (*"TILA"*) and the defendant's counterclaim for money owed on the defaulted loan agreement. Finding that the creditor/defendant's counterclaim for collection of this unpaid debt was compulsory, the Eleventh Circuit stated:

> [o]ne of the purposes of the compulsory counterclaim rule is to provide complete relief to the defendant who has been brought involuntarily into the federal court. See Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co., 426 F.2d at 715. Absent the opportunity to bring a counterclaim, this party could be forced to satisfy the debtor's truth-in-lending claim without any assurance that his claims against the defaulting debtor arising from the same transaction will be taken into account or even that the funds he has been required to pay will still be available should he obtain a state court judgment in excess of the judgment on the truth-in-lending claim. In addition, a determination that the underlying debt was invalid may have a material effect on the amount of damages a debtor could recover on a truth-in-lending claim.

> **To permit the debtor to recover from the creditor without taking the original loan into account would be a serious departure from the evenhanded treatment afforded both parties under the Act. Truth-in-lending claims can be brought in either state or federal court.** To the extent this dual jurisdiction was intended to permit litigation of truth-in-lending claims in actions on the debt, it reflects a purpose that the debt claim and the truth-in-lending claims be handled together. To the extent it was intended to relieve federal courts of any of this litigation, the purpose would be frustrated by providing a sanctuary from the creditor's claims in one jurisdiction but not in the other. State courts would always have jurisdiction of a creditor's counterclaim. **Had Congress intended to insulate recovery in truth-in-lending actions in federal court from the counterclaims of creditors, of which it surely was aware, it could have easily done so.**
>
> We conclude that the obvious interrelationship of the claims and rights of the parties, coupled with the common factual basis of the claims, demonstrates a logical relationship between the claim and counterclaim under the test of Revere Copper & Brass. *Plant* at Pg. 1364. (emphasis added).

This ruling was later upheld by the Eleventh Circuit in its 1987 decision of *Chapes, Ltd. v. Anderson,* 825 F. 2d § 357 (11th Cir 1987). In this case, the Court again ruled that a creditor's claim for damages was a compulsory counterclaim in a Truth in Lending action and was also compulsory in nature when raised against the allegations in a complaint for conversion. *Id.* Finally, the Eleventh Circuit held in the case of *Heaven v. Trust Company Bank,* 118 F. 3d. § 735 (11th Cir 1997) that a counterclaim for debt collection was compulsory in an underlying complaint against a creditor under the federal Consumer Leasing Act ("CLA"). .

District Courts throughout Alabama have followed the doctrine of the Eleventh Circuit that counterclaims for debt collection are compulsory. In the case of *Shelley v. AmSouth Bank,* 2000 WL 1121778 (S.D.Ala. 2000), the Court ruled that a counterclaim for debt collection in underlying Truth in Savings Act ("TISA) case was compulsory. Id.

6

Finally, and most importantly, in a case originating in this Middle District, the Court exercised jurisdiction over the defendant's breach of contract counterclaim and granted summary judgment to the defendant on the debt claim. See *McGrady v. Nissan Motor Acceptance Corp.*, 40 F. Supp. 2d §1323 (M.D. Ala. 1998). In that case, the Court could not have granted that summary judgment without first exercising its independent obligation to review its authority and jurisdiction over the counterclaim. See *Wilson v. Coman*, 284 F. Supp. 2d 1319 (M.D. Ala. 2003); and *Clingan v. Celtic Life Ins. Co*, 244 F. Supp. 2d 1298 (M.D. Ala. 2003).

Arrow is well aware that the Eleventh Circuit has not specifically addressed the issue of whether a counterclaim for a collection of a debt is compulsory in nature when the underlying claim alleges FDCPA violation, as the case here. However, Arrow would suggest that the Truth in Lending Act ("TILA"), the Consumer Lease Act ("CLA") and the Truth in Savings Act ("TISA") are statues similar in nature to the Fair Debt Collection Practices Act ("FDCPA") used here. Therefore, the case law addressing debt collection counterclaims under *TILA* and the other related acts are analogous for the determining whether, in a suit alleging FDCPA claims, a counterclaim for the underlying debt is compulsory under Federal Rule of Civil Procedure 13. See *Gutshall v. Bailey & Associates*, 1991 WL 166963 (case dealing with *TILA* claims with debt counterclaims is analogous to and instructive for FDCPA claims with debt counterclaims).

Arrow's counterclaim for the debt owed should be treated as a compulsory counterclaim because it is so related to the underlying FDCPA and conversion claims brought by Davis that it forms part of the same case or controversy. The claims brought by Davis and the counterclaim of Arrow arise from the same unpaid, charged off credit

card account. In fact, to prove the validity of the claims brought in the original complaint, Davis must actually prove the existence of and therefore the validity of, the unpaid debt to Arrow. Because of the contractual basis of the claims, a logical relationship between both claims is clearly demonstrated. Therefore, under the guidance of the Eleventh Circuit and the prior decision within this District, the counterclaim raised by Arrow must be deemed compulsory in nature thereby giving this Court jurisdiction to hear that claim. Accordingly, the Motion to Dismiss must be denied.

### III.     Supplemental Jurisdiction also is proper

Should the Court find that, in spite of the Eleventh Circuit precedent, the Arrow counterclaim is not compulsory, supplemental jurisdiction over the counterclaim would still exits. Many courts have deemed such a counterclaim permissive and have exercised supplemental jurisdiction found in 28 U.S.C. §1367(a). This co-section provides that:

> "…except that is provided in sub-sections (b) and (c) or that is expressly provided otherwise by federal statute, in any civil action of which the District Courts have original jurisdiction, the District Courts shall have supplemental jurisdiction over all other claims that are so related to the claims and the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367 (a).

Under this statute, the standard for asserting supplemental jurisdiction is broader than a standard for determining a counterclaim to be compulsory as the counterclaim must only be related to the claims and the original action to fall under the supplemental jurisdiction umbrella. See *Bakewell v. Federal Financial Group, Inc.*, 2006 WL 7398007. Numerous courts have held, as *Bakewell*, that a counterclaim for debt collection in an

FDCPA case is permissive and within the supplemental jurisdiction of the District Court provided by 28 U.S.C. §1367. See *Sparrow v. Mazda American Credit*, 385 F. 2d §1063 (N.D. Cal. 2005), ("because defendant's counterclaims bear a logical and factual relationship to the plaintiffs' claims in that they are related to a single debt incurred by plaintiff, supplemental jurisdiction exists over defendants counterclaim under §1367"); *Jones v. Ford Motor Credit*, 358 F. 3d §205 (2nd Cir 2004) (the counterclaim and underlying claim bear a sufficient factual relationship to constitute the same case within the meaning of Article III and hence, §1367. Both the ECOA claim and the debt collection claims originate from the same debt); *Channell v. CitiCorp National Services, Inc.*, 89 F. 3d. §379 (7th Cir 1996) (§1367 has extended the scope of supplemental jurisdiction, as the statute's language says to the limits of Article III – **which means that a loose factual connection between the claims can be enough**.)

Clearly the counterclaim raised by Arrow bears such a factual connection to the claims raised by Davis that supplemental jurisdiction should be exercised here. As stated above, Davis acknowledges the creation and existence of the debt in the complaint. They acknowledge that the collection efforts by Arrow were necessary after the debt remained in default and unpaid. They make no allegation that as of today, this debt has been paid by Davis. Davis, in fact, must prove the existence of this debt to prove their cause of action alleged in their complaint. Based on these facts, there is enough connection between the claims of Davis and Arrow that supplemental jurisdiction over the counterclaims of Arrow is proper under §1367(a).

**IV.    Court should not decline to exercise jurisdiction under 28 U.S.C. § 1367(c)**

The plaintiffs, in their memorandum, urge that should this Court find that supplemental jurisdiction exists under 28 U.S.C. §1367(a), the Court should decline to exercise jurisdiction through the authority found in §1367(c). This section states that:

> "The District Courts may decline to exercise supplemental jurisdiction over a claim under sub-section (a) if –
>
> 1)plaintiff raises a novel or complex issue of state law 2) the claims substantially predominate over the claim or claims over which the District Court has original jurisdiction 3) the District Court has dismissed all claims over which it has original jurisdiction 4) in exceptional circumstances there are other compelling reasons declining jurisdiction.

None of the four factors enumerated under §1367(c) which are necessary for the Court to decline jurisdiction are present in this case. The counterclaim for the debt does not raise a novel or complex issue of state law. It is a merely a collection case, maybe the simplest form of legal action. Davis tries to contend that the contract debt claims raised by Arrow are so complex they would predominate over plaintiffs FDCPA and state law claims. That is simply not correct. Arrow seeks collection of a simple unpaid, charged off credit card debt. A debt to which Davis admits owing and not paying. The burden of proof required by Arrow is not the complex web of evidence that Davis leads this Court to believe. The proof is simple--- does the debt exist and is it unpaid. The proof required is simple, not complicated and as shown in the Complaint and Memorandum filed by Davis, almost, if not completely uncontested. The third factor is also not present as the FDCPA claim over which the Court has original jurisdiction has not been dismissed. Finally, there are no compelling reasons for declining jurisdiction. The plaintiff's urge the dismissal should occur because the counterclaim would have a chilling affect on

FDCPA claims. They claim that the purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using their abusive debt collection practices are not completely disadvantaged and to promote consistent state action to protect consumers against debt collection abuses". Allowance of the counterclaim of Arrow does not in any way defeat the stated purposes of the FDCPA enumerated by Davis. In fact, allowance of the counterclaim allows the Court to opportunity of deciding all issues raised by all of the parties so that a proper determination of the rights and obligations of each party can be made. As stated by the Eleventh Circuit in *Plant*, Federal Court is not a haven for debtors to bring FDCPA claims without fear of debt collection counterclaims. The parties should be given even-handed treatment under the law. Davis seems to want to prevent that. For, while Arrow simply seeks the even-handed opportunity to bring all of the facts before this Court, Davis is strenuously fighting Arrow's right to do so. In fact, it is Davis, through the attempted dismissal of the Arrow counterclaim, who is striking first in an attempt to stifle Arrow's right to collect a debt for which they admit liability. It is Davis who is attempting to chill the rights Arrow to bring a lawful and proper action. The Court should not allow it.

Further, the interest of judicial economy is a "compelling reason" for this Court to allow the counterclaim to proceed. The facts surrounding the counterclaim and the claims raised by the plaintiffs are simple and similar. They will not require additional complex evidence. Arrow has raised in its Answer the defenses of Set Off and Recoupment. To support those defenses, Arrow will prove the existence and validity of the debt. Hence, no additional evidence will be presented to the Court should it allow the

counterclaim. In fact, should the counterclaim not be allowed, this Court would be forced to hear evidence the existence of the debt without ruling on Arrow's right to collect it. By allowing the counterclaim to proceed, this Court will have the opportunity to hear all of the evidence regarding the claims of both parties. Then, after hearing this evidence, the Court can determine whether one of three scenarios exists: (1) Arrow is entitled to its full amount owed with no recovery to Davis; (2) Davis is entitled to full recovery with the Arrow debt not being allowed; or (3) some combination of each alternative. To dismiss the counterclaim as Davis seeks would require Arrow to proceed in state court where the parties would then engage in separate litigation for the Arrow debt. Davis would then raise the same defenses that they would naturally raise in this Court, thereby causing two different Courts to hear the same evidence. This would be expensive to all parties and could result in inconsistent rulings. This is unnecessary as all of the evidence will be before the Court in this case. Therefore, because neither a "compelling reason" nor any other factor under §1367(c) to cause this Court to decline jurisdiction, the counterclaim should be allowed to proceed.

## Conclusion

As Arrow has shown in this memorandum, it is in the best interests of all parties for the counterclaim to be heard in this Court. Binding precedent in the Eleventh Circuit tells us that the Arrow claim is compulsory, thereby giving this Court jurisdiction. Further should the Court not follow that authority, supplemental jurisdiction to hear the counterclaim exists under 28 U.S.C. §1367. Numerous courts have allowed such findings. Finally, it is in the best interest of all parties for the Court to hear all claims between them. This would allow one order to be entered and avoid the possibility of

inconsistent results and multiplicity of actions. The facts surrounding the claims of both parties are simple and are not complex. Arrow's claims do not overshadow those of Davis. They do, however, arise from the same nucleus of operative facts that would allow this Court to exercise jurisdiction. Accordingly, Arrow requests that this Court not provide Davis with a "safe haven" to hide from their financial responsibilities and according, deny the motion to dismiss the counterclaim they have filed.

Respectfully submitted,

Paul J. Spina, III

OF COUNSEL FOR DEFENDANTS
ARROW FINANCIAL SERVICES, LLC

Yearout, Spina & Lavelle, P.C.
1500 Urban Center Drive, Ste 450
Birmingham, Alabama 35242
(205) 298-1800
(205) 298-1801 (Fax)
Pspina@ysllaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing upon the following Counsel electronically through the Court's CM/ECF system and/or by placing a copy of the same in the United States Mail, properly addressed and postage prepaid on this the 3rd day of August, 2007.

Gary W. Stout<br>
David G. Poston<br>
Walter A. Blakeney<br>
Post Office Drawer 311167<br>
Enterprise, Alabama 36330

_/s/_____
Of Counsel